No. 66,548
No. 67,066

In the Matter of J. WILLIAM STAPLETON, *Respondent.*

(824 P.2d 205)

Opinion filed January 17, 1992.

*Paula B. Martin,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with her on the brief for the petitioner.

*J. William Stapleton* appeared pro se, and *J. Chris Morse,* of Kansas City, argued the cause and was on the brief for the respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the disciplinary administrator against J. William Stapleton, of Overland Park, an attorney admitted to the practice of law in Kansas. Two separate complaints were filed against respondent, which have been consolidated for hearing before this court.

In Case No. 66,548, the complainant was Rheta Slawson, executrix of the Ralph E. Harbour Estate. The complaint alleged that respondent accepted employment to perform the necessary legal work to administer the estate of complainant's father, failed to do so, and failed to communicate with complainant. Further, respondent failed to cooperate with the disciplinary administrator. This case will be referred to as the "Slawson matter."

Case No. 67,066 was initiated by the disciplinary administrator's office as a result of testimony given by respondent in the hearing on the Slawson matter. The complaint alleges that respondent misappropriated estate funds, gave false testimony concerning these funds to the hearing panel of the Kansas Board for Discipline of Attorneys in the Slawson matter, and failed to cooperate with the disciplinary administrator.

In neither case are the factual findings or conclusions of the hearing panel contested. The only exception raised by respondent is to the recommendation of the hearing panel that he be indefinitely suspended from the practice of law.

In the Slawson matter, the panel unanimously found as follows:

1. Respondent J. William Stapleton, Kansas Attorney Registration No. 08063, is an attorney whose last registration address with the Clerk of the Appellate Courts of Kansas is 4550 West 109th Street, Suite 230, Overland Park, Kansas 66211. He was admitted to practice in Kansas in 1973.

2. On March 22, 1989, Ralph Edward Harbour died, leaving a will which named his daughter, Rheta E. Slawson, an Ohio resident, as executrix. Respondent was the scrivener of the will.

3. On March 24, 1989, Mrs. Slawson met with respondent and retained him to probate her father's estate. Mrs. Slawson paid a fee of $1,000.00. Mr. Stapleton agreed to provide the requested services at that fee although he told Mrs. Slawson his usual fee was an hourly rate of $100.00.

4. By letter dated March 27, 1989, Mrs. Slawson notified Mr. Stapleton of the names and addresses of the heirs and sought confirmation that Mr. Stapleton would file the estimated income tax returns for 1989.

5. Mrs. Slawson did not hear from Mr. Stapleton, and on May 8, 1989, she wrote to Mr. Stapleton inquiring generally about the status of the case and asked specifically whether the Petition for Probate of Will had been filed and whether he had opened an account to pay bills.

6. Mrs. Slawson repeatedly wrote to Mr. Stapleton with specific questions and/or requests, and Mr. Stapleton failed to take the necessary and/or requested action and failed to contact Mrs. Slawson. Specifically:

(a) On May 30, 1989, Mrs. Slawson wrote to Mr. Stapleton, supplying him with information necessary to remove her brother's name from two stock certificates pursuant to an earlier conversation concerning the same matter. Respondent never told Mrs. Slawson this request could not be honored.

(b) On June 19, 1989, Mrs. Slawson wrote to Mr. Stapleton seeking information on the bank accounts, on payment of her father's bills, and on the status of an appraisal on a lot that was to be sold.

(c) On July 3, 1989, Mrs. Slawson met with Mr. Stapleton and inquired as to the status and progress being made in the case. Mr. Stapleton told Mrs. Slawson that he expected the court to act in one week. At this point in time Mr. Stapleton had not

even filed the Petition for Probate of Will, and no proceeding was pending.

(d) On July 17, 1989, Mrs. Slawson again wrote and inquired as to setting up a checking account and paying bills. She expressed her desire to get the estate proceedings moving and to hear from Mr. Stapleton.

(e) On July 21, 1989, the Petition for Probate of Will was filed in the District Court of Wyandotte County, Kansas, Case No. 89-P-394, In the Estate of Ralph E. Harbour.

(f) On September 18, 1989, Mrs. Slawson again wrote to Mr. Stapleton concerning a lot, payment of bills, and removing her brother's name from the two stock certificates.

(g) On November 12, 1989, Mrs. Slawson requested information about the lot and removing her brother's name from the stock certificates. She requested that Mr. Stapleton acknowledge receipt of her prior letter, which contained dividend checks. She also enclosed a tax bill for the lot.

(h) Soon thereafter Mrs. Slawson and Mr. Stapleton had a telephone conversation concerning removing Mrs. Slawson's brother's name from the stock accounts and payment of bills. Mr. Stapleton told Mrs. Slawson that the court had approved payment of the bills. On November 27, 1989, Mrs. Slawson wrote to Mr. Stapleton confirming the telephone call and requested a list of bills approved for payment by the court. At this point in time respondent had not filed a Petition for Approval of Demands, the court had not signed an order approving payments, and no such pleading was filed until January 17, 1990.

7. Mrs. Slawson also made numerous telephone calls to Mr. Stapleton that were not returned.

8. Sometime after January 18, 1990, Mr. Stapleton moved his offices but did not inform Mrs. Slawson. She learned of the move when she placed a telephone call to Mr. Stapleton's former number and was advised by a secretary of Mr. Stapleton's new number.

9. On February 9, 1990, Mrs. Slawson wrote to Mr. Stapleton directing him to call upon receipt of the letter and to answer certain questions by February 23, 1990. This letter was sent by certified mail and a copy was sent by regular mail. Mr. Stapleton did not call nor did he respond to the questions.

10. On February 15, 1990, Mrs. Slawson contacted H. Reed Walker, Chairman of the Wyandotte County Bar Association Grievance and Ethics Committee. Mr. Walker wrote to Mr. Stapleton on February 17, 1990, informing him of Mrs. Slawson's concerns and urging him to contact Mrs. Slawson. Mr. Walker also called Mr. Stapleton on February 19, 1990. Mr. Stapleton did not contact Mrs. Slawson.

11. On March 23, 1990, Mrs. Slawson wrote to Mr. Stapleton, requesting information on the status of the estate and informing him that if the information was not provided by April 3, 1990, that he was removed as her attorney. Mr. Stapleton did not respond.

12. During the period in which Mr. Stapleton represented Mrs. Slawson (March 27, 1989, to April 3, 1990) he sent only three pieces of correspondence to Mrs. Slawson.

13. The Petition for Probate of Will and Issuance of Letters Testamentary was not sent to Mrs. Slawson for signature until May 15, 1989, two months after Mr. Stapleton was retained, and was not filed with the court until July 21, 1989, two months after his client executed it and returned it to him.

14. The inventory was not filed until January 17, 1990, although K.S.A. 1990 Supp. 59-1201 provides that the Inventory and/or Valuation shall be filed within 30 days after the date of a personal representative's Letters of Appointment, unless a longer time has been granted by the court. No additional time was requested or granted. The inventory that was filed contained numerous errors.

15. Also on January 17, 1990, Mr. Stapleton filed a Report of Demands And Petition for Approval, indicating that he had paid certain debts of the deceased and seeking court approval. He obtained the judge's signature on an order approving the demands and finding that his payment of these debts was proper. As of January 17, 1990, Mr. Stapleton had not paid any of the four debts he had listed. The report also failed to list two creditors.

16. The Report of Demands and Petition for Approval referred to above was the last pleading filed by Mr. Stapleton. However, Mr. Stapleton told Sally Harris, the attorney assigned to investigate this complaint, that the matter had been set for final hearing in May 1990.

17. The decedent, Mr. Harbour, had sold a house on a contract providing for installment payments. The buyers' monthly payment was deposited into an account which bore the names of the decedent, the buyer, Pamela Johnson, and the buyer's mother, Martha Ruppel, who took care of the decedent. Mrs. Slawson notified Mr. Stapleton of these facts, but Mr. Stapleton failed to take any action. After Mr. Harbour's death, the buyers made payments into this account through June 1989. On July 11, 1989, the account was closed by Mrs. Ruppel, and the balance of $14,938.61 was deposited into a new account bearing the names of Mrs. Ruppel, her husband, and Mrs. Johnson. No action was ever taken by Mr. Stapleton to recover any portion of these funds.

18. Mr. Stapleton also failed to file the Kansas Inheritance Tax Return due on December 22, 1989, or the 1989 Federal Income Tax Return for the decedent, and a 1989 Fiduciary Income Tax Return. Mrs. Slawson obtained the services of a certified public accountant who obtained an extension and filed the income tax returns.

19. Mr. Stapleton told Mrs. Slawson that he would open a checking account for the estate. An account was not opened until September 15, 1989, when a checking account was opened at Colonial Savings. Another account was opened on October 25, 1989, at Overland Park State Bank and Trust (OPSB). Mrs. Slawson sent checks made payable to the decedent to Mr. Stapleton on the following dates in the following amounts, and the checks were not deposited in a timely manner:

| Date Sent | Amount | Date of Deposit | Place of Deposit |
| --- | --- | --- | --- |
| April 24, 1989 | $141.88 | September 15, 1989 | Colonial Savings |
| April 24, 1989 | 555.00 | September 15, 1989 | Colonial Savings |
| May 8, 1989 | 725.52 | September 15, 1989 | Colonial Savings |
| Sept. 16, 1989 | 725.52 | October 25, 1989 | OPSB |
| Nov. 7, 1989 | 541.68 | January 11, 1990 | OPSB |
| Nov. 12, 1989 | 183.84 | January 11, 1990 | OPSB |

20. On October 31, 1989, Mr. Stapleton closed the account at Colonial Savings and received a check made payable to the Estate of Ralph Harbour for $1,422.40. This check was endorsed by Mr. Stapleton and deposited into his trust account. No accounting was ever made by Mr. Stapleton to Mrs. Slawson for these funds

and the funds were not returned by Mr. Stapleton until the February 13, 1991, hearing on this complaint.

21. By letter dated March 23, 1990, Mrs. Slawson directed Mr. Stapleton to turn over all files, stock certificates, stock dividend checks, debentures, property titles, checking account records, and any other items or information relating to the estate to Hylton Harmon, the attorney she hired to replace respondent.

22. On April 13, 1990, Sally Harris spoke with Mr. Stapleton by phone and directed him to turn over all such assets and the file to Mr. Harmon. By letter dated April 16, 1990, Ms. Harris confirmed this telephone conversation and directed that these documents be given to Mr. Harmon.

23. Mr. Stapleton failed to contact Mr. Harmon and failed to turn over the assets of the estate and the file to Mrs. Slawson or to Mr. Harmon.

24. By letter dated March 7, 1990, Bruce E. Miller notified Mr. Stapleton of the complaint and requested a response within seven days. The letter was sent to 8676 West 96th Street, Suite 100, Overland Park, Kansas 66212. This was the address then on file with the Clerk of the Appellate Courts. No response was received.

25. The matter was referred to Sally Harris for investigation. Ms. Harris wrote to Mr. Stapleton on March 15, 1990, and on April 10, 1990, requesting a response. No response was received.

26. On April 13, 1990, Ms. Harris telephoned Mr. Stapleton, who stated that he knew nothing of the investigation. He stated that he would be preparing a response. This agreement for respondent to prepare a written response to the complaint was confirmed in a letter dated April 16, 1990, from Ms. Harris to Mr. Stapleton. No response was ever received.

27. On April 19, 1990, Mr. Miller mailed a copy of the letter of complaint and a copy of his letter of March 7, 1990, to Mr. Stapleton at 4550 West 109th Street, Suite 230, Overland Park, Kansas 66211. No response was received.

28. Jack Ford, investigator for the disciplinary administrator's office, went to the office of Mr. Stapleton and requested information on the estate's bank accounts. Mr. Stapleton agreed to provide the information on September 12, 1990. Respondent failed to provide this information until around January 19, 1991.

The panel then concluded that respondent had violated Supreme Court Rule 226, Model Rules of Professional Conduct (1991 Kan. Ct. R. Annot. 222), as follows:

1. MRPC 1.1 (1991 Kan. Ct. R. Annot. 228), by failing to represent the client competently in that he failed to determine the applicable law, to prepare, to refer the case to other counsel, or to seek assistance from a lawyer familiar with probate practice;

2. MRPC 1.2 (1991 Kan. Ct. R. Annot. 229), by failing to abide by his client's lawful decision to transfer the probate proceeding to other counsel;

3. MRPC 1.3 (1991 Kan. Ct. R. Annot. 232), 1.4 (1991 Kan. Ct. R. Annot. 234), and 3.2 (1991 Kan. Ct. R. Annot. 275), by failing to act promptly and diligently in starting or completing the probate proceeding and by failing to keep his client informed;

4. MRPC 1.15(b) (1991 Kan. Ct. R. Annot. 263), by failing to advise Mrs. Slawson of his possession of money belonging to the estate and by failing to promptly account for and pay over that money;

5. MRPC 1.16(a)(3) (1991 Kan. Ct. R. Annot. 267), by failing to withdraw as counsel for Mrs. Slawson upon being terminated, and MRPC 1.16(d) (1991 Kan. Ct. R. Annot. 267), by failing to turn over the file and cooperate with subsequent counsel;

6. MRPC 8.4(g) (1991 Kan. Ct. R. Annot. 308), by engaging in conduct which adversely reflects on his fitness to practice law; and

7. Supreme Court Rule 207(a) and (b) (1991 Kan. Ct. R. Annot. 149), by failing to assist or cooperate in the disciplinary administrator's investigation of this complaint.

In mitigation, respondent, through counsel, stated that he was unfamiliar with probate law, that the fee was less than an attorney who is experienced in probate practice would charge, and that he was making a good faith effort to do the work. Respondent testified that he had recently started to see a counselor to deal with his depression. He attributed his failure to cooperate to "burnout" from answering previous letters of complaint. Respondent stated that he sought counseling after a disciplinary hearing in September 1990 because he had thoughts of suicide.

In aggravation, the panel was informed that, although restitution of the fee and the estate funds had been made, this was

not done until the date of the disciplinary hearing and that respondent had had prior discipline, including an informal admonition, a public censure, and a case pending before this court in which suspension was recommended. The pending case has now been decided by this court, and respondent has been suspended for one year, effective October 25, 1991. *In re Stapleton*, 249 Kan. 524, 819 P.2d 125 (1991).

After considering evidence in aggravation and mitigation, the panel in the Slawson matter recommended that respondent be indefinitely suspended from the practice of law and that costs be assessed to respondent.

In Case No. 67,066, the hearing panel unanimously found as follows:

1. Respondent opened an account at Colonial Savings on September 15, 1989, in the name of the Estate of Ralph E. Harbour and made an initial deposit of $1,422.40.

2. On October 31, 1989, respondent closed the account at Colonial Savings, received a check in the amount of $1,422.40 made payable to the Estate of Ralph E. Harbour and J. William Stapleton, endorsed that check, and deposited it into his trust account, account number 736-6, at the Overland Park State Bank.

3. Rheta Slawson was the executrix of the Estate of Ralph E. Harbour, deceased. Respondent returned the estate funds in the amount of $1,422.40 to Mrs. Slawson on February 13, 1991, at a hearing before the Board.

4. During the hearing held on February 13, 1991, in Case No. B-4875, respondent stated that the $1,422.40 belonging to the estate of Ralph E. Harbour had remained in his trust account from the date of its deposit on October 31, 1989, until it was paid to Mrs. Slawson on February 13, 1991. He further testified that if the balance was less than $1,422.40 in his trust account during this period, it would have "been something like a dollar" for service charges.

5. On the same date that the funds from the Harbour estate were deposited in his trust account, October 31, 1989, respondent wrote a check to Hartford Insurance Company in the amount of $2,364.30 noting on the check that the money was for "Abram." This left a balance in his trust account of $9.28. The balance in respondent's trust account remained less than $20.99 from Oc-

tober 31, 1989, until December 21, 1989 when a deposit of funds for another client in the amount of $5,053.50 was made to the account.

6. Respondent contends that there was an error in his trust account by reason of his having overpaid the sum of $1,425.00 sometime during 1987 or early 1988. Even if that were true, and the panel had no evidence on this other than respondent's testimony, it seems clear that an additional $1,425.00 in the trust account would still leave the account considerably short of clients' funds deposited in the account during the relevant time period.

7. On March 5, 1991, the disciplinary administrator wrote respondent at his registered address requesting an explanation of the apparent deficiency in his trust account. No response was received.

8. On March 22, 1991, a letter was personally delivered to respondent from the disciplinary administrator's office requesting that he respond to the March 5, 1991, letter within 10 days. No response was made.

The panel then concluded that respondent had violated the following Model Rules of Professional Conduct:

1. MRPC 1.15(a) and (d), by failing to properly maintain the funds of clients paid to him in an identifiable trust account;

2. MRPC 8.4(c), by engaging in conduct misrepresenting the funds held in his trust account;

3. MRPC 8.4(d), by engaging in conduct prejudicial to the administration of justice; and

4. Supreme Court Rule 207, by failing to properly assist the disciplinary administrator in the investigation of the complaint.

In mitigation, respondent testified that he had been involved in counseling at Johnson County Mental Health Center since July 1991 with Darrell Miller, a licensed social worker. He had seen Mr. Miller on two occasions. He had seen Dr. Jon Holman, Medical Director, once to obtain a prescription for an antidepressant.

Respondent further testified that he had also been in counseling with Dr. Edward Downs in 1987, but that this was for counseling in anticipation of marriage, and that in January 1991 he met with Dr. Grossman but did not continue with that counseling.

Respondent attributed his current depression to the death of his father from cancer in 1982, separation from his wife in 1983, divorce in 1985, termination of a serious relationship in 1988, and removal of skin cancers in 1989.

In aggravation, the panel was informed of prior disciplinary proceedings, which included a hearing panel recommendation of indefinite suspension from the hearing in the Slawson matter; respondent's pattern of misconduct in previous cases involving lack of competence, lack of diligence, lack of communication, and failure to cooperate; and the increasing seriousness of the conduct as evidenced by the instant case involving mishandling of funds and misrepresentations to a hearing panel.

Again, the panel recommended indefinite suspension, noting that normally disbarment would be the appropriate discipline.

Respondent recognizes that "there are a number of things he should have done differently." However, he contends that he was suffering from depression, which affected his conduct. He states that he is now ready, willing, and able to maintain a law practice. He urges this court to consider public censure and to impose certain restrictions on his practice of law as suggested in respondent's proposed rehabilitation plan.

We have carefully reviewed the record and the panel report. The panel was obviously concerned about respondent's present and past conduct. The panel noted the similarity of respondent's conduct in previous complaints and the pattern of a failure to communicate with his clients and with the disciplinary administrator's office. Respondent's action evidences a total disregard of his duty to his client, his profession, and the court. We concur with and adopt the panel's findings, conclusions, and recommendations.

IT IS THEREFORE ORDERED that J. William Stapleton be and he is hereby indefinitely suspended from the practice of law in the State of Kansas, effective October 25, 1991.

IT IS FURTHER ORDERED that respondent shall comply with the provisions of Supreme Court Rule 218 (1991 Kan. Ct. R. Annot. 163) and pay the costs of this proceeding, and that this order be published in the official Kansas Reports.